**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X
STARR INDEMNITY & LIABILITY COMPANY, : Civil Index No.
: **20-CV-8868**
Plaintiff, :
:
– against – :
:
Indorama Ventures Holdings LP, :
:
Defendant. :
:
---------------------------------------------------------------------- X

Plaintiff Starr Indemnity & Liability Company ("Starr"), by and through its attorneys, as and for its Complaint against Defendant Indorama Ventures Holdings LP ("Indorama"), alleges the following upon information and belief:

**PARTIES**

1. Plaintiff Starr was and is a foreign corporation, with its principal place of business located within this County at 399 Park Avenue, New York, New York 10022.

2. Plaintiff Starr was and is an insurance company that was and is licensed to do business in the State of New York.

3. Defendant Indorama was and is a foreign business entity duly organized and existing under and by virtue of the laws of the State of Delaware with a registered agent located at 251 Little Falls Drive, Wilmington, Delaware and a principal place of business located outside of the State of New York.

4. Defendant Indorama maintains an office located within this County at 120 Broadway, 32nd Floor, New York, New York 10271.

5. Defendant Indorama is a subsidiary of Indorama Ventures Public Company Limited.

6. Defendant Indorama is a limited partnership between Indorama Ventures Public Company Limited and Far Eastern Investment (Holding) Ltd., both of which are foreign business entities duly organized and existing under and by virtue of the laws of a foreign country or countries.

7. Defendant Indorama is a limited partnership between one or more foreign business entities duly organized and existing under and by virtue of the laws of a foreign country or countries and with their principal places of business in a foreign country or countries.

8. Defendant Indorama is an affiliate of Indorama Ventures Quimica, a foreign business entity duly organized and existing under and by virtue of the laws of a foreign country, with its principal place of business located at Poligono Industrial, S/N 11360, San Roque, Cadiz, Spain.

9. At and during all the times hereinafter mentioned, upon information and belief Defendant Indorama directly or through its intermediaries and/or agents, was engaged in the business of supplying petrochemicals and other merchandise to its customers in the State of New York, and regularly does or solicits business, and engages in a persistent course of conduct and/or derives substantial revenue from goods used or services rendered in this State.

10. At and during all the times hereinafter mentioned, Defendant Indorama directly or through its intermediaries and/or agents, including but not limited to Lockton Companies LLC, solicited and negotiated for the subject insurance contract (described more fully herein) within this State and submitted to Starr, and sought adjustment of, its claim within this State.

## JURISDICTION AND VENUE

11. This action is, in relevant part, filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2018), and an actual controversy of a justiciable nature exists

between Plaintiff Starr and Defendant Indorama involving the rights and obligations under a contract of marine insurance in connection with Indorama's claim for losses, in excess of €2,547,770.00 (US$3,014,865.41), arising from a fire at Defendant Indorama's operations in San Roque, Cadiz, Spain. Depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court without further suit.

12. This controversy comes within the Court's original admiralty and maritime jurisdiction under 28 U.S.C. § 1333 (2018) and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

13. This controversy comes within the Court's original diversity jurisdiction under 28 U.S.C. § 1332 (2018) because the parties are citizens of different domestic and foreign states and the mount in controversy exceeds $75,000.00.

14. To the extent that Plaintiff Starr asserts any claim not within this Court's original jurisdiction, Plaintiff Starr invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (2018).

15. Venue is proper in this Court because a substantial part of the events giving rise to the dispute herein occurred in this County, including, but not limited to, acts of solicitation and negotiation for the subject insurance contract, and the binding, execution, and issuance of the subject insurance contract, and the adjustment of Defendant Indorama's claim.

## STATEMENT OF THE CLAIM

### The Insurance Policy

16. On or before September 9, 2014, Defendant Indorama retained, employed, or otherwise agreed with Lockton Companies LLC ("Lockton") for the latter to act as Defendant Indorama's licensed insurance broker and agent.

17. At and during all the times hereinafter mentioned, Lockton maintained an office and business address at 1185 Avenue of the Americas, Suite 2010, New York, New York 10036.

18. At and during all the times hereinafter mentioned, Lockton is a property/casualty and excess lines broker licensed by the New York Department of Financial Services.

19. Upon information and belief, from its New York office, Lockton, as agent for and on behalf of Defendant Indorama, solicited from and negotiated with Starr the procurement of a manuscript marine open cargo insurance policy.

20. Starr executed and issued the subject manuscript marine open cargo insurance policy in New York, New York.

21. Starr delivered the subject manuscript marine open cargo insurance policy to Lockton in New York.

22. A true and authentic copy of the subject "Marine Open Cargo Policy," assigned policy number MASICNY0311US14, applicable for shipments made on and after March 31, 2014 (subject to the full terms and conditions of the policy), together with amendatory endorsements is incorporated herein and attached hereto as Exhibit "1."

23. Defendant Indorama delegated to Lockton the responsibility for acquiring insurance for Indorama and its affiliates in relation to the coverages provided by the subject manuscript marine open cargo insurance policy and, through Lockton, obtained the requested insurance coverage.

24. The Broker's Clause (clause 61) in the subject manuscript marine open cargo insurance policy provides: "It is a condition of this Policy, and it is hereby agreed that The Assured's Brokers, Lockton Companies LLC shall be deemed to be exclusively the agents of The Assured [i.e., Indorama] and not of This Assurer [i.e., Starr]."

25. Lockton, as agent for Indorama, drafted the subject manuscript marine open cargo insurance policy.

26. After the issuance of the subject manuscript marine open cargo insurance policy, anniversary endorsements (titled or identified as a "Confirmation of Marine Cargo Insurance") were issued with successive annual effective dates that modified and continued the duration of the manuscript marine open cargo insurance policy and became a part thereof (collectively the "Cargo Policy").

27. The manuscript marine open cargo insurance policy was modified and amended at various times since its issuance, including in relevant part by the Confirmation of Marine Cargo Insurance and by endorsements.

28. In relevant part, on April 29, 2019, Starr executed and issued to Indorama a Confirmation of Marine Cargo Insurance, which modified the Cargo Policy and was applicable for shipments made on and after March 31, 2019. A true and authentic copy of the aforementioned Confirmation of Marine Cargo Insurance is incorporated herein and attached hereto as Exhibit "2."

29. Lockton, as agent for Indorama, negotiated and drafted the aforementioned Confirmation of Marine Cargo Insurance executed by Starr on April 29, 2019.

30. The Cargo Policy, in particular the Confirmation of Marine Cargo Insurance, specified the assured as Defendant Indorama "and/or its subsidiary, associated, affiliated and interrelated companies, and joint ventures in which it now has or hereafter may have a direct interest . . . ."

31. The Cargo Policy, in particular the Confirmation of Marine Cargo Insurance, included a schedule of insured locations to which the terms and conditions of the Cargo Policy applied.

32. The Cargo Policy, in particular the Confirmation of Marine Cargo Insurance, included Indorama Ventures Quimica, located at Poligono Industrial, S/N 11360, San Roque, Cadiz, Spain on the schedule of insured locations to which the terms and conditions of the Cargo Policy applied.

### The Fire & Loss

33. On June 25, 2019, a fire arose at Indorama's (and/or its affiliate's) purified isophthalic acid ("PIA"), polyethylene terephthalate ("PET"), and purified terephthalic acid ("PTA") operations in San Roque, Cadiz, Spain.

34. One warehouse facility containing inventory of PIA and PTA, as well as packaging supplies/dunnage, was destroyed.

35. Silos containing PIA and PTA in a separate warehouse facility as well as the production facility were undamaged.

36. For itself and/or on behalf of its affiliate, Indorama Ventures Quimica, Indorama provided notice of the fire to Starr and sought indemnity under the subject Cargo Policy, which Starr adjusted and paid to Indorama €4,253,590.46 (US$4,844.000.00) less the deductible ($25,000.00).

37. Starr made a first payment to Indorama, on account, in the amount of $1,975,000.00 in December 2019.

38. Starr made a second payment to Indorama, as the final adjustment, in the amount for $2,844,000.00 in March 2020.

**Lost Product At The Storage Facility**

39. Indorama claimed indemnity in the amount of €4,348,000.00 for Indorama's product allegedly at the facility destroyed by the fire.

40. Based upon a forensic accounting analysis, 4,623MT of Indorama's product was determined to have been at the facility destroyed by the fire instead of the 4,790MT claimed by Indorama.

41. Starr determined that the value of the product at the facility destroyed by the fire, based upon selling price less unincurred expenses as required by the Cargo Policy, was €3,969,050.00 and Starr adjusted and paid Indorama accordingly.

42. Indorama has not disputed or otherwise objected to Starr's adjustment and payment for Indorama's claim for product determined to have been at the facility destroyed by the fire.

**Adjusted Debris Removal Costs & Additional Debris Removal Costs**

43. Indorama claimed indemnity in the amount of €399,463.00 for debris removal costs.

44. Starr adjusted Indorama's claim for debris removal costs based upon certificates of destruction, which established that less product was actually removed from the facility (3,270.58MT) than Indorama claimed (3,344.78MT).

45. Starr adjusted Indorama's claim for debris removal costs by excluding from the adjustment certain asbestos removal costs, translucent panel replacement costs, and clean-up costs that Indorama had improperly included in its claim.

46. Starr adjusted the claim and paid Indorama €284,540.00 for debris removal costs.

47. Indorama has not disputed or otherwise objected to Starr's adjustment and payment for Indorama's claim for debris removal costs incurred as a result of the fire.

48. Indorama subsequently claimed indemnity in the amount of €411,813.00 for unspecified debris removal costs (the "Additional Debris Removal Costs").

49. Indorama has not provided the particulars or any substantiation for its subsequently claimed Additional Debris Removal Costs.

50. Indorama has not disclosed whether the amount of the subsequently claimed Additional Debris Removal Costs is in addition to the €284,540.00 Starr already paid Indorama for debris removal costs.

## Container Stowed Product

51. Indorama claimed indemnity in the amount of €3,853,606.00 for product stowed in shipping containers adjacent to the facility that were allegedly damaged as a result of the fire ("Container Stowed Product").

52. Indorama's product allegedly damaged as a result of the fire were stowed in shipping containers that were outside of the storage facility.

53. Indorama had not assigned the product stowed in the shipping containers to any customers and had not scheduled any shipments for the containers.

54. Indorama had not scheduled any shipments for product stowed in the shipping containers.

55. Indorama claimed its estimated loss (or "expected loss") for product stored in the shipping containers that were damaged as a result of the fire to be in the amount of 3,670MT, which it valued at €3,853,606.00.

56. Indorama did not and has not substantiated its loss for product stored in the shipping containers outside the facility.

### **Packaging Supplies/Dunnage**

57. Indorama claimed indemnity in the amount of €937,953.00 for packaging supplies allegedly damaged during the fire.

58. The packaging supplies for which Indorama sought indemnity consisted of pallets, polypropylene bags and liners, uncut rolls of empty plastic for creating bags, shrink wrap, and desiccants (the "Packaging Supplies").

59. The packaging supplies for which Indorama sought indemnity consisted of dunnage, including metallic bars, cords, and cardboard (the "Dunnage").

60. None of the Packaging Supplies/Dunnage contained Indorama's products.

61. None of the Packaging Supplies/Dunnage were in actual use at the time of the alleged loss.

62. According to Indorama, some of the Packaging Supplies/Dunnage were "next to the warehouse" or at the "side of the warehouse," including the uncut plastic rolls, cardboard, and some pallets.

63. Indorama represented to Starr that the quantity of Packaging Supplies/Dunnage inside the facility was merely "a relevant amount."

64. On June 2, 2020, Indorama revised its claim for Packaging Supplies/Dunnage to €725,811.00, after removing pallets and a small quantity of cardboard (€525.00) from its claim.

65. After extensive correspondence between the parties and payment by Starr to Indorama of the adjusted claim amount, Starr denied the unpaid portions of Indorama's claim in a letter to Indorama (care of its agent, Lockton) dated August 25, 2020. A true and authentic

copy of the aforementioned declination letter by Starr dated August 25, 2020, is annexed hereto as Exhibit "3."

## AS AND FOR ITS FIRST CAUSE OF ACTION

66. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "65" of this Complaint as if fully set forth herein.

67. Indorama has made a demand upon Starr for coverage for its estimated loss for product stored in the shipping containers outside of the facility at the time of the fire (i.e., the Container Stowed Product).

68. The Cargo Policy, specifically the Confirmation of Marine Cargo Insurance, provides a "Storage Endorsement" provision, which in turn includes a "Non-Bulk Liquid Inventory Storage" provision. It provides:

> NON-BULK LIQUID INVENTORY STORAGE:
>
> It is understood and agreed that this policy is extended, subject to all terms and conditions, to cover goods and/or merchandise incidental to the business of assured while such goods and/or merchandise are *at a storage facility*. Unless specifically provided for elsewhere in this policy, or instructions to the contrary are given or received by The Assured, good in storage insured under this policy be valued as per the valuation in the marine transit section.

69. The Container Stowed Product stored in shipping containers is not at a storage facility within the meaning of the Cargo Policy.

70. Indorama did not request that the coverage under the Cargo Policy be extended to cover goods stored outside of the facility, such as in shipping containers.

71. Indorama did not pay additional premium to Starr for coverage under the Cargo Policy to be extended to cover goods stored outside of the facility, such as in shipping containers.

10

72. Indorama knew, through its agent, that where Starr and an insured agreed to extend coverage to goods stored outside of the facility, such as in shipping containers, such coverage was expressly stated and additional premium charged.

73. Indorama did not and has not substantiated its loss for the Container Stowed Product stored in shipping containers outside the facility.

74. Based upon the foregoing, Starr is entitled to a declaration that Defendant Indorama is not entitled to coverage under the subject Cargo Policy for the claimed loss for which Plaintiff Starr has not already indemnified Defendant Indorama.

## AS AND FOR ITS SECOND CAUSE OF ACTION

75. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "74" of this Complaint as if fully set forth herein.

76. Indorama has made a demand upon Starr for coverage for its Packaging Supplies/Dunnage at the facility and outside of the facility that were allegedly lost or damaged as a result of the fire.

77. The Cargo Policy, specifically the Confirmation of Marine Cargo Insurance, provides a "Storage Endorsement" provision, which in turn includes a "Non-Bulk Liquid Inventory Storage" provision, which specifies the goods insured. It provides:

> NON-BULK LIQUID INVENTORY STORAGE:
>
> It is understood and agreed that this policy is extended, subject to all terms and conditions, to cover *goods and/or merchandise incidental to the business of assured* while such goods and/or merchandise are at a storage facility. Unless specifically provided for elsewhere in this policy, or instructions to the contrary are given or received by The Assured, good in storage insured under this policy be valued as per the valuation in the marine transit section.

11

78. In turn, the "Goods Insured" clause in the Cargo Policy, specifically the Confirmation of Marine Cargo Insurance, provides:

GOODS INSURED

*Goods, merchandise and cargo of every description consisting principally of but not limited to bulk shipments of chemicals, Polyester resins, fibers, film, Synthetic fibers, chemicals, . . . and similar chemicals; also machinery, equipment, and other shipments incidental to The Assured's business* or otherwise, including duties and taxes applicable and increased value howsoever arising, the property of the Assured or for which the Assured have or assume a responsibility to insure, whether contractually or otherwise, or for which the Assured receive instructions to insure prior to shipment or prior to known or reported loss or accident.

79. The Confirmation of Marine Cargo Insurance specifically amended the scope of the goods insured provision in the original policy (Ex. 1), which applied to "Goods and/or merchandise *and/or property* of every description incidental to The Assured's business . . . ."

80. Indorama's Packaging Supplies are not goods within the meaning of the Cargo Policy.

81. Indorama's Packaging Supplies are not merchandise within the meaning of the Cargo Policy.

82. Indorama's Dunnage are not goods within the meaning of the Cargo Policy.

83. Indorama's Dunnage are not merchandise within the meaning of the Cargo Policy.

84. To the extent there is coverage under the Cargo Policy for Indorama's Packaging Supplies/Dunnage , the Cargo Policy, specifically the Confirmation of Marine Cargo Insurance, provides and applies as follows:

> In the event that the Assured shall have placed specific insurance at any location covered by this policy, this insurance shall be held to apply at such location for the difference only between the specific insurance and the

Case 1:20-cv-08868   Document 1   Filed 10/23/20   Page 13 of 15

> amount at risk at such location, not exceeding the applicable limit of liability. In all cases where insurance against the risk of fire have been placed by others, covering any property covered by the terms of this endorsement, this insurance shall attach only to the extent that such other insurance is insufficient to cover the amount at risk, and this Company shall be liable for that amount only, not exceeding the limit of liability specified herein, which cannot be collected under such other insurance and could not have been collected if this policy had not been issued.

85. The foregoing Other Insurance clause in the subject Cargo Policy, specifically the Confirmation of Marine Cargo Insurance, applies if Indorama's claimed losses are covered under any other insurance policy, irrespective of whether Indorama has sought coverage under any other insurance policy.

86. Based upon the foregoing, Starr is entitled to a declaration that Defendant Indorama is not entitled to coverage under the subject Cargo Policy for the claimed loss for which Plaintiff Starr has not already indemnified Defendant Indorama or, in the alternative if there is coverage, declaring that Defendant Indorama is entitled to coverage for Packaging Supplies/Dunnage stored at the facility only as per the amount afforded by the Other Insurance clause, if any.

## AS AND FOR ITS THIRD CAUSE OF ACTION

87. Plaintiff repeats and realleges its allegations contained in paragraphs "1" through "86" of this Complaint as if fully set forth herein.

88. Indorama has made a demand upon Starr for coverage for its Additional Debris Removal Costs allegedly incurred as a result of the fire.

89. Starr adjusted Indorama's original claim and paid Indorama €284,540.00 for debris removal costs, which Indorama did no dispute or otherwise object to Starr's adjustment and payment for such debris removal costs.

90. Indorama's demand for coverage for its belatedly submitted Additional Debris Removal Costs is greater than its original claim that it submitted to Starr and which was adjusted and paid.

91. Indorama did not and has not substantiated its loss for Additional Debris Removal Costs in excess of the amounts Starr already paid Indorama.

92. Indorama's demand for coverage for its belatedly submitted Additional Debris Removal Costs is duplicative, in whole or in part, of its original claim that it submitted to Starr and which was adjusted and paid.

93. Indorama has not proffered any reason(s) for its belated demand for coverage for its Additional Debris Removal Costs after its original claim for same was submitted to, and adjusted and paid by, Starr.

94. Based upon the foregoing, Starr is entitled to a declaration that Defendant Indorama is not entitled to coverage under the subject Cargo Policy for the claimed loss for which Plaintiff Starr has not already indemnified Defendant Indorama.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered as follows:

(i) against Defendant Indorama Ventures Holdings LP and in favor of Plaintiff Starr Indemnity & Liability Company on its first, second, and third causes of action;

(ii) against Defendant Indorama Ventures Holdings LP and in favor of Plaintiff Starr Indemnity & Liability Company declaring that the subject Cargo Policy does not cover Defendant Indorama for any and/or all damage and/or additional, supplemental, and/or consequential losses, arising from the June 25, 2019, fire for which Plaintiff Starr has not already indemnified Defendant Indorama;

(iii) awarding to Plaintiff its costs and fees; and

      (iv)    for such other and further relief this Court may deem just, equitable, and proper.

Dated: October 23, 2020
      New York, New York

                                         Respectfully submitted,

                                NICOLETTI HORNIG & SWEENEY
                              *Attorneys for Starr Indemnity & Liability Co.*

                By: <u>      s/John A.V. Nicoletti      </u>
                      John A.V. Nicoletti, Esq.
                      William M. Fennell, Esq.
                      Wall Street Plaza
                      88 Pine Street, Seventh Floor
                      New York, New York 10005
                      Tel: 212-220-3830
                      E-mail: JNicoletti@NicolettiHornig.com
                      Reference No.: 28000288

Complaint (FINAL)